IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHAH MAHMOOD SELAB,

Petitioner,

v.

No. 2:24-cv-01271 KG/KRS
No. 2:22-cr-02019 KG

UNITED STATES OF AMERICA,

Respondent.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Shah Mahmood Selab's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 1; Cr. Doc. 57) (Motion).[1] Petitioner is a federal prisoner and proceeding *pro se.* He asks the Court to vacate his conviction for coercion and enticement of a minor based on four ineffective assistance of counsel claims. The United States responded, (Doc. 9), and Mr. Selab filed a Reply, (Doc. 15). Within the Reply, Petitioner withdraws one ineffective assistance of counsel claim, and partially withdraws another. Having reviewed the record and the relevant law, the Court will dismiss the Motion and deny a certificate of appealability.

Also before the Court are two additional filings submitted by Mr. Selab, titled: (1) "Notice to Court and All Interested Parties of the Defense's Retainment of Hector Jimenez, Private Investigator; and Motion Seeking Authorization for Jimenez to Receive and Confidentially Handle Government's Sensitive Case File Information Currently Under Court Protective Order for Purposes of 28 U.S.C. § 2255 Relief," (Doc. 3); and (2) "Motion to File

[1] Citations to (Doc. __) are to documents filed in the Civil Case No. 2:24-cv-1271, and citations to (Cr. Doc. __) are to documents filed in the Criminal Case No. 2:22-cr-2019.

Investigator Affidavit," (Doc. 6). Both Motions will be denied.

I. Background

On August 12, 2022, the Las Cruces Police Department responded to a call in which a 12-year-old minor male reported being the victim of a sexual assault at Youngs Park in Las Cruces, New Mexico. (Cr. Doc. 1) at 2 (Complaint). The victim indicated that Mr. Selab approached him in the park, showed him sexually explicit videos and pictures on a cell phone, rubbed his leg, penis, and buttocks over his clothing, and attempted to lure him into a vehicle. *Id.* at 2-3. The victim stated that he tried to get away by going into a public restroom and locking himself in a bathroom stall, but Mr. Selab followed him, unlocked the stall, kissed him on the face, and offered him money. *Id.* at 4. At some point, Mr. Selab punched the child in the face. *Id.* at 3. Mr. Selab tried to get the victim to touch his penis, but when a third-party entered the restroom, the child was able to escape and report the incident. *Id.* at 4.

On September 6, 2022, Mr. Selab was charged by Complaint of coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). (Cr. Doc. 1). On December 14, 2022, a grand jury indicted him on the coercion and enticement charge (Count 2), as well as an additional charge of trafficking a minor between the age of fourteen and eighteen for a commercial sex act, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2) (Count 1). (Cr. Doc. 25) (Indictment).

On February 9, 2023, Mr. Selab appeared for a Change of Plea Hearing. (Doc. 9-1) (Gov't Ex. 1) (Plea Hearing Transcript I). During the hearing, Mr. Selab expressed some confusion about the proceedings. His attorney indicated that although he had gone over the details with his client, the fact that Mr. Selab had recently moved to the United States explained his hesitancy to answer questions related to the plea. *Id.* at 11. Consequently, the Court

provided Mr. Selab with additional time to discuss the matter with his attorney and decide whether he wanted to enter a plea of guilty or move forward with a trial. *Id.* at 9-11.

On April 4, 2023, Mr. Selab returned to Court and pleaded guilty to Count 2 of the Indictment pursuant to a Plea Agreement. (Cr. Doc. 38) (Plea Agreement); (Doc. 9-2) (Gov't Ex. 2) (Plea Hearing Transcript II). In the Plea Agreement, the parties accepted that the appropriate sentencing range for Count II should be between 10 to 30 years. *Id.* at 5. On December 13, 2023, Mr. Selab was sentenced to a total term of 210 months imprisonment, or 17.5 years, and a five-year term of supervised release. (Cr. Doc. 54) (Judgment). He did not appeal.

On December 11, 2024, Mr. Selab timely filed the instant Motion seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. 1; Cr. Doc. 57). He asserts four grounds for relief: (1) his guilty plea was entered involuntarily, unknowingly, and unintelligently because counsel advised him to plead guilty without "receiving discovery and researching or investigating the purported evidence," failed to provide him with documents in his native language, used a "conflicted translator," and forced him to plead guilty despite his declaration of innocence; (2) his counsel was ineffective for advising him to plead guilty prior to obtaining the Government's discovery, reviewing evidence, conducting investigations, and interviewing witnesses; (3) his counsel was ineffective for using a translator who was "unqualified" and "conflicted;" and (4) his counsel was ineffective for failing to file a notice of appeal.

The Government responded to the arguments in the Motion (Doc. 9), and Mr. Selab filed a Reply (Doc. 15). The Reply contained a "Preliminary Statement," in which Mr. Selab explicitly indicated his desire to withdraw two of his ineffective assistance of counsel arguments:

> Furthermore, based on evidence provided by the government's Response, Selab withdraws his claim that counsel advised him to plead guilty "without first receiving discovery[.]" . . .
>
> . . .
>
> Finally, although Selab remains adamant that he told his friend to advise counsel that he wished to appeal, he nevertheless withdraws this ground for relief. The bulk of Selab's claims rest on the knowing and voluntary aspect of his guilty plea; the resolution which would either moot Selab's failure to file claim or render an appeal meritless considering the express appeal waiver contained in the agreement.

(Doc. 15) at 1-2. The Court will, therefore, consider the ineffective assistance claims alleging that Mr. Selab's counsel failed to provide him with discovery and did not file an appeal as voluntarily dismissed.

II. Discussion

A petition under Section 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Relief is available where "the sentence was imposed in violation of the Constitution or laws of the United States," including the Sixth Amendment right to effective counsel. 28 U.S.C. § 2255(a). *See also U.S. v. Tucker*, 745 F.3d 1054, 1066 (10th Cir. 2014) ("Sixth Amendment claims asserting ineffective assistance of counsel can and generally must be brought in a habeas action for post-conviction relief under 28 U.S.C. § 2255.").

A successful ineffective assistance of counsel claim must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must show "[c]ounsel's performance was deficient" and contained "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 688. In other words, the representation must fall below an objective standard of reasonableness based on

prevailing professional norms. *Id.* at 687-88. The Court is required to "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel acted reasonably." *Welch v. Workman*, 639 F.3d at 980, 1012 (10th Cir. 2011) (quotations omitted). The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)); *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997) ("There is a strong presumption that counsel's performance falls within the wide range of professional assistance, the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.") (citations omitted).

The second prong of *Strickland* requires the petitioner to affirmatively prove the deficient performance prejudiced the defense. *Battenfield v. Gibson*, 236 F.3d 1215, 1234 (10th Cir. 2001) (citing *Strickland*, 466 U.S. at 693-693). The movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of pleas, the petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). *See also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("[A] defendant must show the outcome of the plea process would have been different with competent advice"). Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

A. *Ineffective Assistance of Counsel*

Due to Mr. Selab's withdrawal of two of his original arguments, his basis for habeas relief is narrowed to three assertions: (1) he involuntarily, unknowingly, and unintelligently entered a plea of guilty because his counsel failed to provide him with documents in his native language; (2) his counsel inappropriately used an "unqualified" and "conflicted" interpreter; and (3) his counsel forced him to plead guilty despite his declaration of innocence. *See* (Doc. 15).

1. *Provision of Documents in Mr. Selab's Native Language*

Mr. Selab represents that he can only communicate in Pashto and does not speak, read, or write in the English language. (Doc. 1) at 4, 7. In his instant § 2255 Motion, he represents that counsel "never provided [him] with documents in his native language." *Id.* at 4. He does not identify which specific documents he wanted translated and submitted to him in Pashto.

The Government responds that there is no legal requirement for discovery to be translated into a criminal defendant's native language and, because this is a child exploitation case, the Court's Protective Order restricted Mr. Selab's access to the discovery. (Doc. 9) at 23 (citing Cr. Doc. 21) (Protective Order). The Government further points to his counsel's Affidavit, in which Mr. O'Connell attested that he and an English-Pashto interpreter visited Mr. Selab "four separate times," "spent 10 hours attempting to assist," including "2-3 hours discussing the evidence and charges," and that during these visits his counsel "brought the paperwork to jail from the case." (Doc. 9-5) (Gov't Ex. 5).

In his Reply, Mr. Selab agrees that discovery, such as police reports and victim statements, did not need to be provided to him in Pashto. (Doc. 15) at 3. However, he argues that the "charging instrument and plea agreement" did need to be translated. *Id.* He does not

identify any other documents he wanted translated from English to Pashto. Although he admits that he signed the Plea Agreement and it included a statement confirming it was read to him in the language he understands best, he insists he did not understand the content. *Id.* at 4-5.

"The procedures under which a challenged plea was taken play an important . . . role in determining the validity of the plea." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). "[S]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74.

Here, Mr. Selab is contending that his plea was not made knowingly and voluntarily due to his counsel's failure to translate his Indictment and Plea Agreement from English to Pashto, and that such failure caused him to not understand that he was entering a plea of guilty to the charge of enticement of a minor. This argument, however, is belied by the record. At his Change of Plea Hearing on April 4, 2023, the Honorable Jerry H. Ritter, United States Magistrate Judge, first ensured that Mr. Selab and his interpreter could hear each other:

> THE COURT: All right. Mr. O'Connell, can we make a record of the particular language that's being interpreted for today?
>
> MR. O'CONNELL: Yes. I believe it's Pashto.
>
> THE COURT: Thank you. Mr. Selab, are you able to hear and understand me through the interpreter?
>
> MR. SELAB: Yes, I can. I can understand.
>
> THE COURT: All right. Mr. Selab, if at any time you don't understand what we're doing or you have any questions you'd like to ask your attorney

> confidentially, just let me know, and we'll make sure that you understand and have that opportunity.
>
> MR. SELAB: Okay.

(Doc. 9-2) at 2-3.

Judge Ritter then proceeded to conduct an extensive plea colloquy as follows, in pertinent part:

> THE COURT: Mr. Selab, at this time would you like to go forward with your guilty plea or instead return to the trial docket?
>
> MR. SELAB: That is okay, I plead guilty.
>
> THE COURT: All right. Understand that it's my duty to make sure that the record shows that your plea is knowing, meaning you understand what you're doing.
>
> MR. SELAB: Understood.
>
> THE COURT: All right. Thank you. I last explained how, with this plea agreement, the parties are promising that they will recommend a sentence between 10 and 30 years. I also explained that the sentencing judge could decide to accept that recommendation or could reject that recommendation and impose a longer sentence, up to life as a maximum. Do you understand that that is what your plea agreement says?
>
> MR. SELAB: Yes, it's okay.
>
> . . .
>
> THE COURT: Your plea agreement also contains the Government's promise that after sentencing they will move to dismiss the other charge in this case. Do you understand?
>
> MR. SELAB: Yes. It's okay.
>
> THE COURT: Are you satisfied that you understand each and every term of our plea agreement?
>
> MR. SELAB: Yes.

> THE COURT: Have you had an adequate discussion of every part of your agreement with your attorney?
>
> MR. SELAB: Yes.
>
> THE COURT: Did your attorney answer all of your questions about the agreement?
>
> MR. SELAB: Yes.
>
> THE COURT: Other than what's written in your agreement, did anyone promise you anything in exchange for your plea?
>
> MR. SELAB: No.
>
> THE COURT: Based upon your agreement, how do you plead to the charge in Count 2 of enticement of a minor? Do you plead guilty or not guilty?
>
> MR. SELBA: I plead guilty. It's okay.

(Doc 9-2) at 23-26.

These answers were provided *after* a recess in the middle of the Change of Plea Hearing so that Mr. Selab's counsel could be sure that he understood all the questions asked of him in the colloquy. *See id.* at 21-22. Mr. Selab explicitly indicated he was satisfied with "each and every term of the Plea Agreement" and that he discussed "every part" of it with his attorney. The Plea Agreement included a statement above Mr. Selab's signature, which indicated:

> This agreement has been read to me in the language I understand best, and I have carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of the elements of the offense, or possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(Doc. 38) at 15.

At the hearing, Judge Ritter also asked the prosecutor to describe the elements the Government would have to prove if his case went to trial. *Id.* at 26-27. The prosecutor complied with the request, reviewed Count 2 of the Indictment, and Mr. Selab answered in the affirmative when the Court asked whether the explanation of the charge was a true description of his actions. *Id.* at 27-28. Before finding his plea to be knowing, voluntary, and supported by sufficient facts, Judge Ritter inquired:

> THE COURT: Mr. Selab, have you understood all of my questions today?
>
> MR. SELAB: Yes.
>
> THE COURT: And let me ask one more time to be sure. Is pleading guilty, according to this plea agreement, what you want to do today?
>
> Mr. SELAB: Yes.

(Doc 9-2) at 28-29.

A review of the above plea colloquy conducted during the Change of Plea Hearing evidences that Mr. Selab's guilty plea was free from force or threat and entered into with the requisite understanding. A Pashto-English translator was present during the Plea Hearing and Mr. Selab assured the Court that he could hear the interpreter and would speak up if at any time he could not hear or understand a translation. Mr. Selab affirmed that he went over the Plea Agreement with his counsel, and that all of his questions were answered. Judge Ritter reviewed the sentencing consequences that Mr. Selab could face by pleading guilty, and Mr. Selab expressed his understanding. Judge Ritter directed the prosecutor to go over the elements of the enticement of a minor charge and Mr. Selab agreed that his actions gave rise to such a charge, and understood that the second charge would be dismissed as a result of his plea. Judge Ritter

determined that Mr. Selab was aware of the nature of the allegations against him and the consequences of pleading guilty, and he found his plea to be knowing and voluntary. At no time did Mr. Selab indicate that he needed to see the Plea Agreement or Indictment in his native language, rather he confirmed that all had been explained to him. *See United States v. Trejo-Nolasquez*, 346 F. App'x 374, 377 (10th Cir. 2009) (petitioner's argument that his plea was not knowing and voluntary was belied by the fact that he had a translator, did not indicate at any time during his plea or sentencing that his inability to speak or read English compromised his ability to understand the plea, and he confirmed he reviewed the plea agreement and charge with his attorney).

In sum, the plea colloquy supports the conclusion that Mr. Selab knowingly and voluntarily entered into his guilty plea. *See United States v. Kutilek*, 260 App'x 139, 145 (10th Cir. 2008) (relying on plea colloquy to find that defendant's plea was knowing and voluntary). The Tenth Circuit consistently "denie[s] relief under . . . § 2255 to petitioners alleging that their guilty pleas were the product of ineffective assistance when their plea colloquies demonstrated otherwise." *Holt v. Brac*e, 418 Fed. App'x 697, 701 (10th Cir. 2011) (collecting Tenth Circuit cases).

Further, Mr. Selab fails to establish any prejudice from the alleged error in not receiving a copy of his Indictment and Plea Agreement in the Pashto language. He has made no showing that he would have elected to forgo his guilty plea and proceed to trial if he had received written copies of either document in Pashto. *See Hill*, 474 U.S. at 60 (petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Under the Plea Agreement here, Mr. Selab was

sentenced to a total term of 210 months imprisonment, or 17.5 years. (Cr. Doc. 54). As the prosecutor explained at the Sentencing Hearing:

> MS. STAHL: Your Honor, the Government would ask for probably an above-guideline sentence, even if this case went to trial. And if he went to trial on two counts, both have a mandatory minimum. The first count would have a 15-year mandatory minimum. The second count has a 10-year mandatory minimum. And we would have asked the Court to run those consecutively. And high-end ranges on those would be well over 30 years.

(Doc. 56) at 13. Mr. Selab's attorney advised him during the Plea Hearing that the Government would alternatively go after the two charges "with a significant chance" of prevailing at trial. (Doc. 9-1) at 17-18. Thus, if Mr. Selab proceeded to trial, he likely faced two mandatory minimum consecutive sentences of 10 to 15 years up to life. Mr. Selab has not shown that he would have undertook the risk of significantly higher penalties. Consequently, Mr. Selab has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance of counsel under *Strickland*.

*2. Counsel's Use of an "Unqualified" and "Conflicted" Interpreter*

Mr. Selab argues that his counsel was ineffective because he "obtained the services of an unqualified and conflicted interpreter." (Doc. 1) at 7. He claims his interpreter was affiliated with the International Rescue Committee (IRC), an organization designed to assist Afghan refugees transition to the United States. *Id.* Mr. Selab alleges his interpreter was "stealing from all Afghans being helped by the IRC's New Mexico Chapter" and, around the time of his arrest, he got into "a heated argument" with the interpreter regarding a sum of cash he describes as "welcome money." *Id.* Mr. Selab accuses his interpreter of wrongful behavior during the Plea Hearing because although the transcript reflects that he admitted to the conduct giving rise to the child enticement charge, he claims he did not make any such representations. *Id.*

The transcripts of his Plea Hearings (Docs. 9-1; 9-2) and Sentencing Hearing (Doc. 56) undermine his argument that he was concerned with his counsel's choice of interpreter. At all three of the hearings, Mr. Selab had the opportunity to address the Court. At the February 9, 2023 Change of Plea Hearing, Judge Ritter continued the proceedings so Mr. Selab could have additional time to consult his attorney after he expressed some confusion about the legal process. (Doc. 9-1) (Plea Hearing Transcript I). At no time did Mr. Selab suggest any issues with the choice of interpreter.

On April 4, 2023, Mr. Selab returned to Court and pleaded guilty to Count 2 of the Indictment pursuant to a Plea Agreement. (Doc. 9-2). Again, Mr. Selab did not indicate any concerns related to the integrity of his interpreter. *Id.* at 22-23, 26-28. At his sentencing hearing, Mr. Selab was given the opportunity to speak, but at no time did he alert the Court to any concerns with his interpreter. *See* (Doc. 56) at 33-36. In fact, at the beginning of the hearing, the Court directly asked the interpreter about his qualifications to which he answered: "I'm a Court interpreter. Actually, not certified, but a court-approved interpreter, because we don't have a certification in my language." *Id.* at 3. The interpreter also confirmed that he was properly sworn in to conduct interpretations in New Mexico. *Id.* at 4. At no point during this line of questioning did Mr. Selab alert the Court to any potential personal conflicts. Mr. Selab's failure to bring up any concerns across his three hearings evidences that he entered his guilty plea voluntarily and freely. *See Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995) (holding that a defendant's sworn testimony at a plea hearing establishes that the defendant knowingly and voluntarily entered a guilty plea).

Notably, Mr. Selab's counsel submitted an affidavit attesting to the following regarding

the interpreter:

> Counsel and an Afghani attorney named Tafiq went to the jail. Tafiq is Afghani born, previously a lawyer and police officer in Afghanistan. His father was the chief of police where he grew up. Tafiq is an astute and informed person regarding Afghani law who also generally understands the US court system. Shah states now he was "conflicted" by Tafiq as an interpreter. This was supposedly due to an argument over "Welcome Money." But I never heard this phrase and the two simply did not argue at all.

(Doc. 9-5) at 1.

Although an allegation of fact must ordinarily be accepted as true, it is not required where . . . the allegation is contradicted by the files and records before the court." *Runge v. United States*, 427 F.2d 122, 126 (10th Cir. 1970). *See also United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005) (indicating that, absent "extraordinary circumstances," allegations in a § 2255 motion that directly contradict the petitioner's prior sworn statements are considered "patently frivolous or false"). Mr. Selab does not allege that he spoke to his attorney about his concerns and they were ignored. Rather, the record shows that his attorney had no notice that there was any issue with their choice of interpreter. Consequently, Mr. Selab has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance counsel under *Strickland*.

*3. Counsel Forced Petitioner to Plead Guilty*

Lastly, Mr. Selab argues his counsel forced him to plead guilty despite his declaration of innocence. Again, this ground for relief is belied by the record.

When asked whether anyone threatened or forced him to plead guilty, he responded: "No, because of my children, I intend to do better." (Doc. 9-2) at 6-7. When Mr. Selab expressed concern that he could be sentenced to life imprisonment despite entering into the Plea

Agreement, the Change of Plea Judge reminded him that he did not have to plead guilty and that doing so was entirely his choice:

> THE COURT: I want to be very clear with you. You have the choice to plead guilty today and be bound by the plea agreement that's been drafted. But you do not have to plead guilty today. If you do not want to accept what's in this plea agreement, you can plead not guilty and go to trial or try to negotiate a new agreement. I don't know whether the Government would offer you a better agreement than this. But you need to make the choice either to plead guilty according to this agreement or to protect your right to go to trial on these allegations and perhaps negotiate a new agreement. Do you understand that that's a choice only you can make?
>
> MR. SELAB: Yes, I understand it.
>
> MR. O'CONNELL: Your Honor?
>
> THE COURT: Mr. O'Connell.
>
> MR. O'CONNELL: I'd like to bring, for the record, the fact that I believe that the State would go after the two charges, with a significant chance, from what I understand, of prevailing at trial. And so, you know, he needs to understand this could quite easily be the best of all options that he has now.
>
> MR. SELAB: Okay.
>
> THE COURT: Right. It's very important that this is your choice, Mr. Selab. Do you understand?
>
> MR. SELAB: Yes.

(Doc. 9-2) at 17-18.

Mr. Selab indicated to the Court under oath that he understood pleading guilty was entirely his choice. *Id.* at 18. "[S]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. A defendant's statements at a plea hearing should be regarded as conclusive in the absence of believable evidence that the statements were not made voluntarily. *Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975). *See Fields v. Gibson*,

277 F.3d 1203, 1214 (10th Cir. 2002) (rejecting habeas petitioner's claim that guilty plea was involuntary based on adequate plea colloquy between court and defendant at change of plea hearing). His counsel's encouragement to enter a plea of guilty because it was the best option available is of no consequence. *See Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002) ("Indeed, one central component of a lawyer's job is to assimilate and synthesize information from numerous sources and then advise clients about what is perceived to be in their best interests. Advice – even strong urging by counsel does not invalidate a guilty plea.") *See also Hines v. Miller*, 156 F. Supp. 2d 324, 332 (S.D.N.Y. 2001) (denying writ of habeas corpus where petitioner alleged that counsel strongly urged a guilty plea because petitioner was unlikely to prevail at trial and would wind up serving a shorter sentence by pleading guilty).

At the Change of Plea Hearing, Mr. Selab did attempt to explain his conduct by stating that he thought of the victim "as his son." (Doc. 9-2) at 13, 17. At the Sentencing Hearing, he asserted he was only trying to get the victim in his vehicle so that he could bring him to school because he thought he was a truant. (Doc. 56) at 34-36. However, there is no evidence from either of these transcripts that his counsel forced him to plead guilty. Rather, the record reflects efforts by his counsel to explain to him that the terms of the Plea Agreement would be most beneficial for him based on the sentence he could receive after a criminal trial.

Additionally, Mr. Selab's counsel submitted a sworn affidavit indicating that Mr. Selab did, in fact, admit guilt to him prior to his plea:

> I then went slowly through the entire case accusations against Shah, and carefully inquired whether he had done the various things of which he was accused of to the 12-year-old Victim (V1). Saleb answered in the affirmative for every element, but with his own explanations.
>
> . . .
>
> Overall, as we discussed the case, [Mr. Selab] admitted to all the elements of the

> accusations and agreed to the plea offer, since he had no plausible defense and so would benefit from the State's plea.

(Doc. 9-5) at 1, 3. Prejudice in the context of a guilty plea requires Petitioner to show that there is a reasonable probability that, "but for counsel's errors, the result of the proceeding would have been different." *Sherrill v. Hargett*, 184 F.3d 1172, 1175 (10th Cir. 1999). Based on the evidence against Mr. Selab and his prior admissions to his counsel, it is improbable that a jury would have found Mr. Selab's explanations for his conduct credible. As such, the Court finds counsel was within the range of competent assistance to advice his client to enter a plea of guilty, even if his client wanted to present his behavior as an innocent misunderstanding. Mr. Selab cannot and has not shown he was prejudiced as a result of his counsel's advice.

*4. Additional Motions*

The Court now turns to the two additional pending motions filed by Mr. Selab: (1) "Notice to Court and All Interested Parties of the Defense's Retainment of Hector Jimenez, Private Investigator; and Motion Seeking Authorization for Jimenez to Receive and Confidentially Handle Government's Sensitive Case File Information Currently Under Court Protective Order for Purposes of 28 U.S.C. § 2255 Relief," (Doc. 3); and (2) "Motion to File Investigator Affidavit," (Doc. 6).

Mr. Selab asserts he has retained Mr. Jimenez as his private investigator who needs full access to the documents filed in his criminal case. (Doc. 3) at 1. He asks the Court to order his defense counsel to forward his case file to Mr. Jimenez and "allow said investigator access to the interviews, reports and recording[.]" (Doc. 3) at 2. He additionally asks the Court for permission to file an affidavit from Mr. Jimenez attesting that he has been hired by Mr. Selab and has authority to act on his behalf. (Doc. 6).

Because the Court finds Mr. Selab's instant habeas petition to be without merit, there is no additional facts to investigate. Consequently, the Court will deny these motions.

B. *Evidentiary Hearing*

Courts shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In other words, where the record for a Section 2255 motion "conclusively and expressly belie[s] [Petitioner's] claims," no evidentiary hearing is required. *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also In re Lindsey*, 582 F.3d 1173, 1175-76 (10th Cir. 2009) (holding that an evidentiary hearing is not needed if "the district court has concluded that the record does not entitle the prisoner to relief; either the prisoner has failed even to allege facts on which relief could be predicated, or the record conclusively contradicts the prisoner's allegations"). For the reasons discussed above, the Court finds that the record is sufficient to dispose of each of Mr. Selab's allegations of ineffective assistance of counsel and his allegations do not warrant a hearing.

C. *Certificate of Appealability*

Habeas Corpus Rule 11 provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons explained above, the Court

finds that reasonable jurists could not debate the denial of Mr. Selab's Section 2255 motion and, therefore, a certificate of appealability will be denied.

IT IS ORDERED:

1. Petitioner Shah Mahmood Selab's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. 1; Cr. Doc. 57) is denied with prejudice.
2. Petitioner Shah Mahmood Selab's Motion Seeking Authorization for Private Investigator to Receive Case File (Doc. 3) and (2) Motion to File Investigator Affidavit (Doc. 6) are denied with prejudice.
3. A certificate of appealability is denied.
4. The Court will enter a separate judgment closing the civil habeas case.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.